**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| VICKY RODRÍGUEZ TORRES, et al.<br>    Plaintiffs<br>         v.<br>Government Development Bank P.R.<br>(GDB), Guillermo Camba Casas<br>    Defendants | **CIVIL No. 09-02199-FAB**<br><br>RETALIATION, TORTS<br><br>TRIAL BY JURY |

<u>**PLAINTIFFS' CASE MANAGEMENT MEMORANDUM**</u>

I.  <u>**PALINTIFFS' FACTUAL AND LEGAL CONTENTIONS, WITH**</u>
   <u>**CITATIONS TO STATUTES AND CASE LAW**</u>

<u>**INTRODUCTION**</u>

**1.** This is an action for retaliation and related violations of the constitutional rights of Vicky Rodríguez. The claims, filed on behalf of Mrs. Vicky Rodríguez, her husband and their conjugal partnership, arise from the acts and omissions of defendants, when all throughout the time period starting on August 25th 2009, and until November 10th, 2009, they retaliated against plaintiff Rodríguez in retribution for her filing of an employment discrimination suit against GDB, and further

subjected her to privacy violations while she was on medical leave. The retaliation pattern against Plaintiff continued uninterruptedly until November 10th 2009, when it concluded in her termination from employment. Co-defendant GDB further collaborated, failed in its duty to prevent, and was deliberately indifferent to Plaintiffs' rights, and caused the damages alleged, due to their failure to adequately supervise, discipline and monitor co-defendant Camba, whose actions and omissions were taken in deliberate indifference to Plaintiffs' rights and proximately caused their injuries. Plaintiffs' claims of damages are based on the violation of rights guaranteed under the Constitution and laws of the United States and Puerto Rico.

**2.** Co-defendants' actions in retaliating against plaintiff Rodríguez in retribution for seeking protection of her Constitutional and statutory rights deprived her of her due process rights for a full and fair determination concerning her working conditions.

3. This action is brought pursuant to the following:

    a. **29 U.S.C. § 623**, Subsection **(d)**, of the Age Discrimination in Employment Act (**ADEA**);

    b. **42 U.S.C. § 1983**, as it pertains to deprivation of rights under color of state law;

    c. **42 U.S.C. § 2000e-3**, Subsection **(a)**, Title VII of the Civil Rights Act;

    d. **42 U.S.C. §1988**, Civil Rights Attorney's Fee Act.

4. Plaintiff Vicky Rodriguez is a citizen of Puerto Rico and former employee of Commonwealth of Puerto Rico Governmental Development Bank ["**GDB**"], and at all times relevant to this complaint was married to co-plaintiff Luis Rafael Maldonado Vaillant.

5. Co-defendant GDB is a Puerto Rico public corporation created under **7 L.P.R.A. §551**, et seq.

6. Co-defendant Guillermo Camba is and was at all times relevant to this complaint an officer and employee of GDB.

7. The aforementioned co-defendants directly caused the injuries and violation to Plaintiffs' civil rights by their actions, and by their omissions in failing to prevent others from injuring Plaintiffs.

8. Co-defendant GBD failed in its duty and obligation as an employer to prevent, disavow and dissuade all retaliation actions to their employee's rights by not implementing and enforcing the necessary or convenient measures for this purpose.

9. Co-defendant Guillermo Camba is and was at all times relevant to this complaint Human Resources Director for co-defendant GDB, and designated records custodian for all electronic records maintained by GDB.

10. The above-described actions and omissions were taken on behalf of co-defendant GDB and constitute retaliatory treatment against Plaintiff.

4

11. Retaliatory acts of co-defendants and their refusal to follow departmental standards and procedures for disciplinary actions were taken on behalf of the GDB, and were actions under the color of the statutes, regulations, customs, and usages of the Commonwealth of Puerto Rico.

12. At all times relevant to this complaint, co-defendant Camba was acting under color of the law of the Commonwealth of Puerto Rico.

13. Co-defendant Guillermo Camba is also sued in his personal capacity.

**FACTUAL ALLEGATIONS**

14. Plaintiff Rodríguez was employed by co-defendant GDB starting on or around 1996, until November 10th 2009.

15. On November 18, 2008, Plaintiff timely submitted a charge of discrimination against the co-defendant GDB with the Equal Employment Opportunity Commission ("**EEOC**") on the basis of gender, age and both gender and age.

16. On January 20, 2009, Plaintiff received a "notice of right to sue within 90 days" from the EEOC.

5

**17.** On February 13th, 2009, Plaintiff filed her complaint against co-defendant GDB, and various individual co-defendants. *Rodriguez-Torres, et al vs. Government Development Bank for Puerto Rico, et al, 09-CV-01151 (JP)*.

**18.** On June 19th, 2009, the parties in the aforementioned case filed *their Joint Initial Scheduling Conference Memorandum*, where it was clear that Plaintiff intended to discover, request, produce, and make reference to documents regarding GDB client matters in projects or assignments that Plaintiff had been directly working on. No exceptions were noted by GDB. GDB did not raise any red-flags, warn of the potential disclosure of confidential documents or communications, or seek the protection of the Court in any manner.

**19.** On or around July 15th 2009, in good faith and full compliance with **Fed.R.Civ.P. 26**, Plaintiff submitted in the above case the required initial disclosures, as well as answers and documents pertaining to the

interrogatories and requests for documents served on her by co-defendant GDB.

20. Plaintiff's production was comprised solely of paper copies or reproductions made of the documents at issue as part of her day-to-day job related activities, without disturbing, removing or extracting from GDB facilities the original versions of the same documents. At least as it pertains to Plaintiff, the original documents remain undisturbed, mostly in electronic format, under the custody and control of GDB.

21. The discovery items produced above had some relationship with communications, documents and the work performed by Plaintiff within the confines of co-defendant GDB. As Plaintiff had anticipated, and as laid out in ¶ **18**, above, such production and disclosure was comprised of documents well within the scope of GDB client matters in projects or assignments that Plaintiff had been directly working on. Again: no exceptions were noted by GDB, neither

did GDB raise any red-flags, warn of the potential disclosure of confidential documents or communications, or seek the protection of the Court in any manner.

**22.** On August 12th, and August 19th, 2009, GDB and all defendants took depositions on Plaintiff, where Plaintiff's production of documents was thoroughly discussed in excruciating detail. Neither did GDB's corporate representative at the deposition and here co-defendant Guillermo Camba, nor did any of the other co-defendants present at the deposition, react to the introduction into the record of Plaintiff's production of documents. As in all other previous opportunities to bring any concerns to the attention of the Court or to that of Plaintiff's regarding such documents, GDB failed to note any exceptions, raise any red-flags, warn of the potential disclosure of confidential documents or communications, or seek the protection of the Court in any manner.

23. On August 20th, 2009, a Thursday afternoon, Plaintiff communicated to GDB that she would be unable to accept their settlement offer, according to the terms in which it had been made.

24. On August 24th, 2009, the following Monday morning, Plaintiff received an e-mail from Karol Hernández Cabal requesting Plaintiff's availability to meet that afternoon with co-defendant Guillermo Camba, Director of Human Resources and Labor Relations.

25. On August 25th, 2009, Plaintiff met with co-defendant Camba. Also present at the meeting was Mr. Camba' secretary and assistant, Lynette Lugo.

26. At the above meeting Camba informed plaintiff Rodríguez that GDB had decided to initiate an administrative process against Rodríguez for various serious charges for different violations, including a referral to Governmental Ethics.

27. Also at the above meeting co-defendant GDB served on plaintiff a "charge document", alleging that in complying with **Fed.R.Civ.P. 26**, several serious

violations to GDB's Conduct and Ethics Policy had been committed. Specifically, the charges asserted both orally and in writing that the disclosed documents contained "privileged and confidential" information belonging to GDB, its clients and other third parties.

28. Notwithstanding GDB's claims, they failed to produce a privilege log identifying specifically which part of the documents were privileged and confidential, and what composition of the participants entitled the communications at issue to such a status. GDB further failed to produce any confidentiality agreement, or complaints logged by any of its clients, that would make a showing that Plaintiff's mere reproduction of the documents at issue had exposed GDB to any liability whatsoever. More so, Plaintiff reproduced the documents at issue throughout the course of several years, out in the open, in GDB equipment which does attempt to enforce any type of internal or cost control, through the typical charge-code and

departmental charge-back schemes and mechanisms employed by the most cost-conscious organizations.

29. The documents which so adversely affected the privacy and confidentiality sensibilities of co-defendant Camba were the same ones to which direct and concrete reference had been made as early as June 19th, 2009, and which Plaintiff had physically produced as early as July 15th, 2009.

30. In the above "charge document", plaintiff was summoned to appear at a disciplinary hearing on August 31st 2009 before the Director of Human Resources.

31. Upon receipt of the above "charge document", Plaintiff's mental health was so adversely injured, that she had to seek psychiatric attention.

32. Subsequently Plaintiff was prescribed immediate rest from work, and hospitalized as an outpatient at a psychiatric treatment center.

33. All throughout Plaintiff's medical leave absence from work, starting on August 26th 2009, and until

November 10th 2009, when Plaintiff was finally terminated from her employment with GDB, co-defendants continued the pervasive and harassing retaliatory behavior against her by intrusively, constantly and continuously interrupting her medical treatment and medically prescribed solitude by contacting her at home during the weekends and at the late-evening hours, compelling her and summoning her to report back to work to face the aforementioned pretextual administrative charges leveled against her. The intensity of the harassing conduct by GDB escalated and worsened once the second EEOC charge had been filed.

34. Plaintiff's medical paid leave expired on November 3rd 2009, and on that very same date she was sent home on a paid-leave suspension from work. From that date, until November 10th 2009 the harassing treatment perpetrated by co-defendants on Plaintiff escalated to include retaliatory behavior designed to increase her psychological apprehension about losing her

livelihood, by mockingly scheduling and rescheduling the date at which the pending pretextual disciplinary hearing was to be held.

35. To the present date, the charge document leveled against Plaintiff, the GDB policies purportedly violated by Plaintiff, and all the procedures leading to Plaintiff's eventual dismissal, remain constitutionally vague and insufficient under Cleveland Board of Education v. Loudermill, and its progeny.

36. Neither on November 3rd, nor on November 10th, 2009, was Plaintiff given an opportunity to explain herself, or confront the evidence held against her. Contrarily, on November 10th, right at the hearing were Plaintiff was supposed to present her case, she was handed an envelope containing her discharge letter, as the determination had already been made by GDB to discharge her, regardless of what her side of the story was.

37. Co-defendants' retaliatory conduct has been extremely detrimental to Plaintiff's emotional and physical health necessitating urgent medical treatment and consequent medical expenses.

38. All practices against Plaintiff, by named co-defendants constitute a violation of United States Federal and Puerto Rico anti-retaliatory Law.

39. All injuries suffered by Plaintiff are as a direct and proximate result of the grossly negligent and culpable actions and omissions of co-defendants, which were taken in reckless disregard of and in deliberate indifference to Plaintiff's constitutional rights.

## FIRST CAUSE OF ACTION - RETALIATION

40. 32 L.P.R.A. § 3120, in regulating claims leveled by employees against their employers, expressly protects employees from being countersued or countercharged by their employers, in any way, or for any cause.

41. 29 L.P.R.A. § 194a, prohibits retaliatory acts by an employer against an employee, should the employee offer or attempt to offer, verbally or in writing,

any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico. The employer is liable to compensate employee for benefits, attorney's fees for the real damages suffered, and for mental anguish, at double the amount determined as having caused the violation of the provisions of this section.

42. **29 U.S.C. § 623** and **42 U.S.C. § 2000e-3** contain the anti-retaliatory provisions of the federal Civil Rights legislation.

43. Plaintiffs were involved in a statutorily protected activity, in as much they had initiated a complaint process – *09-CV-01151 (JP)* - against co-defendant GDB, and were actively participating in it in such process in opposition  to GDB's discriminatory actions.

44. Co-defendants took adverse employment action against Plaintiff, in the form of subjecting her behavior to heightened scrutiny after she engaged in the protected activity, subjecting her to disciplinary

proceedings, and continuously harassing her while she was on medically ordered sick-leave.

45. Co-defendants were aware of Plaintiff's protected activity before undertaking the above adverse employment actions.

46. Co-defendants attempted to sanitize the above retaliatory adverse employment actions by producing purported evidence of a legitimate, nondiscriminatory reason for the aforementioned disciplinary proceedings, but such evidence amounts only to a pretext designed to hide the unlawful retaliatory motive and behavior.

47. Co-defendants' retaliatory motive is unmasked by the their late reaction to documents they were well aware of as early as June 19th, 2009, and regarding which they exhibited a *blasé*, relaxed attitude, until August 20th, 2009, when their prospects of a quick settlement of the underlying claim on the cheap had evaporated.

48. Such a late reaction at the very least constitutes any waiver of privacy, confidentiality, or privilege. Furthermore, Co-defendants' once aloof attitude towards documents which suddenly and unexpectedly are grounds for disciplinary proceedings against an admittedly valued and trusted employee of 16 years, constitutes an abuse of process which should not be countenanced by this Court.

49. Co-defendants' *blasé*, aloof attitude towards the documents at issue – prior to August 24th, 2009, that is – will be further evidenced by their lack of security measures, access control, business continuity, or specialized backup and restoration procedures defined and enforced for the same.

50. Co-defendants' disciplinary actions against Plaintiff are further unsustainable as legitimate, when the documents at issue are public, and over which any citizen has a right to access. **32 L.P.R.A. 1781;** *Angueira v. J.L.B.P.,* **150 D.P.R. 10 (2000);** *Ortiz v. Dir. Adm. de los Tribunales,* **152 D.P.R. 161,**

175 (2000); *Soto v. Secretario de Justicia,* 112 *D.P.R.* 477, 485 (1982); *Santiago v. Bobb,* 117 *D.P.R.* 153, 159 (1986); *Mar-mol Co., Inc. v. Adm. de Servicios Generales,* 126 *D.P.R.* 864, 872 (1990).

51. Plaintiffs protected activity of initiating the above legal proceeding against co-defendant GDB was the direct cause which motivated both co-defendants to engage in the adverse employment action against Plaintiff.

52. Co-defendants' acts constitute significant retaliatory treatment that is reasonably likely to deter Plaintiffs and other GDB employees from initiating, or participating indirectly in protected activities, such as appearing as witnesses on behalf of Plaintiffs in the aforementioned litigation, and thus have had and currently have a chilling effect upon the willingness of individuals to speak out against co-defendant GDB's employment discrimination, or to participate in other administrative or judicial employment discrimination proceedings.

53. The above practices were undertaken by co-defendants with malice and reckless indifference to the federally and locally protected rights of all Plaintiffs.

54. The above adverse employment actions materially affect the terms, conditions, or privileges of Plaintiff's employment.

### SECOND CAUSE OF ACTION – DUE PROCESS

55. Plaintiffs further allege that the above unlawful actions by co-defendants also violate the protections contained in the United States Constitution, in as much it mandates under its $V^{th}$ and $XIV^{th}$ Amendments that persons being deprived of liberty or property interests by governmental action must receive both, procedural and substantive due process.

56. Rodríguez' original quest for an evidentiary hearing, and now for reinstatement and back pay, depends primarily on the strength of her claims of procedural Due Process rights granted by the United States Constitution, in its $V^{th}$ and $XIV^{th}$ Amendments, and as recognized and extended to public-sector

19

employees in *Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985)*. Such claims derive from Rodríguez' ostensible property interest in her continued employment with GDB, as it typically accrues to public employees who hold career positions in Puerto Rico. *Lupiáñez v. Secretario de Instrucción, 105 D.P.R. 696, 700 (1977)*.

57. GDB, having leveled specific disciplinary charges against Rodríguez, which Rodríguez decries as pretextual and labeled as retaliatory, owed her a pre-termination evidentiary hearing, with advance timely notice, and the right to appear assisted by counsel. *Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 5-6 (1st Cir. 2000); Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir.1988); Marrero Caratini v. Rodriguez Rodriguez, 138 D.P.R. 215, 222 (1995)*.

58. Before subjecting Rodríguez to a pro-forma procedure where obviously the decision had already been made to terminate her, she was entitled to an opportunity to test the strength of the purported character of the

evidence GDB claimed they had against her. ***Arnett v. Kennedy,*** *416 U.S. 134 (1974).*

### THIRD CAUSE OF ACTION - PRIVACY RIGHTS

59. Plaintiffs further allege that the above unlawful actions by co-defendants also violate the protections contained in the United States Constitution, as they constitute violations of privacy rights, and unlawful intrusion upon seclusion.

60. The actions and omissions described herein constitute a privacy claim based on the violation of her right to privacy and dignity, a tort in violation of the provisions of **Article II §§1**, **8** and **16** of the Constitution of the Commonwealth of Puerto Rico. ***Arroyo v. Rattan Specialties, Inc.,*** *117 D.P.R. 35 (1986);* ***Segarra v. Royal Bank de Puerto Rico,*** *145 D.P.R. 178 (1998).*

### FOURTH CAUSE OF ACTION - TORTS

61. The pervasive retaliatory actions, violations to Plaintiff's rights to due process, privacy and dignity have disrupted Plaintiffs' health, peace of mind, family life, and lifestyle.

62. The actions and omission described herein constitute a tort under the Constitution and laws of the Commonwealth of Puerto Rico, for which co-defendants respond to Plaintiffs in compensatory damages, pursuant to **Article 1802** and **1803** of the **Civil Code of Puerto Rico.**

## II. <u>PLAINTIFFS' FACT AND EXPERT WITNESSES</u>

63. Vicky Rodríguez Torres – Plaintiff, starting on or before August 25th 2009, and until November 10th 2009, was the victim of the unlawful retaliatory acts committed by all Co-defendants directly against her in retribution for her filing of an employment discrimination suit against GDB (Case: 09-cv-01151-JP). Co-defendants unlawful retaliatory acts further escalated and intensified in the form of egregious privacy violations while Plaintiff was on medical leave during the above dates. The unlawful retaliatory acts subject of the present complaint continued uninterruptedly until November 10th 2009, when they culminated in Plaintiff's termination from employment. The actual termination, and any damages

or causes of action accruing on or after that event are not part of this complaint. Consequently, Plaintiff has full knowledge and information of claims contained in the complaint.

64. Luis Rafael Maldonado Vaillant – Co-plaintiff is the spouse of Vicky Rodríguez Torres and has witnessed the emotional and physical effect that the unlawful retaliatory acts committed by all Co-defendants have had on Rodríguez' health, and state of mind. Co-plaintiff has also suffered direct emotional and economic distress as a result of the unlawful retaliatory acts committed by all Co-defendants against Plaintiff. Co-plaintiff has direct personal knowledge of the retaliatory acts against Plaintiff, and of all damages suffered by Plaintiff and himself.

65. Carlos García – As President and principal executive for GDB participated in all capacity planning, reduction-in-force, hiring, terminating, and staffing decisions at GDB at all times relevant to the present complaint. Has direct knowledge of the events that

led to the present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint.

66. Javier Ramos Luíña – As Principal Financing Officer for GDB, with a rank exceeding that of Plaintiff in her chain-of-command, and co-defendant in Case: 09-cv-01151-JP, participated in all capacity planning, reduction-in-force, hiring, terminating, and staffing decisions at GDB – or at least within Plaintiff's chain-of-command – at all times relevant to the present complaint. Has direct knowledge of the events that led to the present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint.

67. Enid López López – As Director of Municipal Financing Department for GDB with a rank exceeding that of Plaintiff in her chain-of-command, and co-defendant in Case: 09-cv-01151-JP, participated in

all capacity planning, reduction-in-force, hiring, terminating, and staffing decisions at GDB – or at least within Plaintiff's chain-of-command - at all times relevant to the present complaint. Has direct knowledge of the events that led to the present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint.

68. Ángel Pérez Rivera - As Director of Private Financing of GDB, with a rank exceeding that of Plaintiff in her chain-of-command, and co-defendant in Case: 09-cv-01151-JP, participated in all capacity planning, reduction-in-force, hiring, terminating, and staffing decisions at GDB – or at least within Plaintiff's chain-of-command - at all times relevant to the present complaint. Has direct knowledge of the events that led to the present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint.

69. Luis I. Alfaro Martínez – As Executive Vice President of the GDB, with a rank exceeding that of Plaintiff in her chain-of-command, and co-defendant in Case: 09-cv-01151-JP, participated in all capacity planning, reduction-in-force, hiring, terminating, and staffing decisions at GDB – or at least within Plaintiff's chain-of-command - at all times relevant to the present complaint. Has direct knowledge of the events that led to the present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint

70. Fernando Batlle - As Executive Vice President of the GDB, with a rank exceeding that of Plaintiff in her chain-of-command, and co-defendant in Case: 09-cv-01151-JP, participated in all capacity planning, reduction-in-force, hiring, terminating, and staffing decisions at GDB – or at least within Plaintiff's chain-of-command - at all times relevant to the present complaint. Has direct knowledge of the events

that led to the present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint.

71. Marine Comas Torres – As Recruitment and Appointment Director for GDB, and co-defendant in Case: 09-cv-01151-JP, participated in all capacity planning, reduction-in-force, hiring, terminating, and staffing decisions at GDB at all times relevant to the present complaint. Has direct knowledge of the events that led to the present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint.

72. Naphis Torres Padró –As Human Resources Director for GDB and co-defendant in Case: 09-cv-01151-JP, participated in all capacity planning, reduction-in-force, hiring, terminating, and staffing decisions at GDB at all times relevant to the present complaint. Has direct knowledge of the events that led to the

present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint.

73. Edgardo Rodríguez Nieves –As Human Resources Sub-Director and co-defendant in Case: 09-cv-01151-JP, participated in all capacity planning, reduction-in-force, hiring, terminating, and staffing decisions at GDB at all times relevant to the present complaint. Has direct knowledge of the events that led to the present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint.

74. Guillermo Camba Casas – Co-defendant. As Human Resources Director participated in all capacity planning, reduction-in-force, hiring, terminating, and staffing decisions at GDB at all times relevant to the present complaint. Has direct knowledge of the events that led to the present complaint. Also has direct knowledge and custody of e-mail communications

made in connection to the events that led to the present complaint.

75. Gloryvette Balaguer Estrada – As assistant to Co-defendant has direct knowledge of the events that led to the present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint.

76. Lynette Lugo – As assistant to Co-defendant has direct knowledge of the events that led to the present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint.

77. Karol Hernández – As assistant to Co-defendant has direct knowledge of the events that led to the present complaint. Also has direct knowledge and custody of e-mail communications made in connection to the events that led to the present complaint.

### III. <u>PLAINTIFFS' DOCUMENTARY EVIDENCE</u>

78. Without exception, GDB is already in possession of all documents Plaintiffs intent to rely on in support of their claims. Most of the original versions of such documents, in their original electronic native file format, are under the possession, custody, and control of GDB. Since Plaintiffs are only in possession of purported copies of such documents, downgraded and stripped to paper images of the same, Plaintiffs through their discovery requests intend to obtain electronic copies of the documents in their original electronic native file format, with all of the corresponding original metadata. Notwithstanding the above, Plaintiffs list and identify the documents they intent to rely on in support of their claims, and which they also happen to have copies of in their possession.

79. Plaintiffs' and GDB's disclosures in Case: 09-cv-01151-JP, in all their versions and including all of their supplements;

80. Plaintiffs' and GDB's answers, responses, and production of documents in compliance with the discovery requests served on Plaintiffs and GDB by the opposing party in Case: 09-cv-01151-JP, in all their versions and including all of their supplements;

81. Plaintiffs' and GDB's pleadings and filings crossed and exchanged between the parties in Case: 09-cv-01151-JP.

### IV. PLAINTIFFS' DISCOVERY REQUESTS

82. Plaintiffs have served the following discovery requests, which are herein attached:

   a. A Scope Definition document titled *PLAINTIFFS' DISCOVERY PLAN*, served on all Co-defendants on April 5th, 2010;

   b. A 15 interrogatory and 7 production request titled *PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS*, served on GDB on April 5th, 2010;

   c. A 19 interrogatory and 1 production request titled *PLAINTIFFS' SECOND SET OF DISCOVERY*

*REQUESTS*, served on Guillermo Camba on April 7th, 2010.

83. Plaintiffs intend to take one deposition, on co-defendant Guillermo Camba.

84. Plaintiffs intend to serve *Requests for Admissions* on all co-defendants.

85. Plaintiffs intent to serve subpoenas on the following third-parties:

    a. Antidiscrimination Unit of the Puerto Rico Department of Labor and Human Resources, for records regarding other claims leveled against all Co-defendants;

    b. Equal Employment Opportunity Commission, for records regarding other claims leveled against all Co-defendants;

    c. Office of the Comptroller of the Commonwealth of Puerto Rico, for records regarding contracts between GDB and other third parties, regarding GDB's Information Technology capabilities,

business continuity plans, back-up and record retention, data security, etc.;

**d.** GDB clients addressed in the purported confidential documents disclosed by Plaintiff, regarding press releases, news coverage and other mass-dissemination of the transactions between these third-parties and GDB, and which will reflect a confidentiality or privilege waiver, if there ever had been one, regarding these communications.

## V. <u>CALCULATION OF DAMAGES</u>

86. These initial computations are subject to continuing analysis and will be revised or supplemented if and as necessary. Certain assumptions and calculations are likely to change as additional information is accumulated. Since past damages are increasing daily, these damages will continue to increase.

87. Reasonable and necessary actual past medical damage, anticipated future medical damages, and physical pain

and suffering: estimated to be in a sum not less than $600,000.00.

88. Emotional or mental, and physical distress caused by employer's illegal conduct, including anxiety, depression, and other mental suffering or illness: estimated to be in a sum not less than $800,000.00.

89. GDB retaliated against Plaintiff, an employee, in a manner which deprived her of employment opportunities thus affecting her status as an employee, and therefore is liable in a sum equal to twice the amount of damages sustained by the employee on account of the acts described herein estimated to be in a sum not less than $2,800,000.00.

## VI. OTHER MATTERS DEEMED APPROPRIATE BY PLAINTIFFS

90. Plaintiffs' take on what transpired during the Rule (26) differs materially from GDB's portrayal of the same events, as stated in Co-defendants' *Initial Scheduling Conference Memorandum* - **Doc.# 32**, *at *23*. Plaintiffs do admit that they included in their initial disclosures the names of 13 GDB past or

present GDB officers. Plaintiffs also admit that GDB inquired into the relevance of the aforementioned individuals to the present claim, and that the description of their discoverable information was stereotyped and vague. Unfortunately, from that moment on, GDB starts to exhibit a pattern of inequitable conduct, by straying from their duty of candor, honesty, and rectitude, without concealment or deception, that they owe the Court and all parties involved in this litigation (***ABA Model Rules of Professional Conduct***, ***Rule 3.3 Duty of Candor to the Tribunal***. <u>Available at</u>:

<u>http://www.abanet.org/cpr/mrpc/mrpc_toc.html</u>, last visited on April 22nd, 2010, at 11:57 A.M.).

91. Far from refusing to address GDB's concerns as stated in the above paragraph, Plaintiffs did set forth that their interests in, and disclosure of, the above named individuals was not as witnesses, necessarily, but rather based on the likelihood of

them having discoverable information, as required by **Fed. R. Civ. P. 26(a)(1)(A)(i).**

92. Plaintiffs further explained that the mailbox containers under the custody, or assigned to, the named individuals actually comprised such 'discoverable information' of interest. The link between the mailbox containers, Plaintiffs continued, could be easily inferred and was even commonsensical to the layperson: in claims where employees allege retaliation for having sued their employer and other individuals within and above their own chain-of-command, it is reasonable to believe that such individuals, and others within the Human Resources functional group, might have communicated amongst themselves regarding any retaliation or actions they plan to take, or already took, in retribution against said employee.

93. Consequently, Plaintiffs insisted, the standard of 'discoverability' required at this stage of the proceedings had been met, and that discussions

regarding a stricter standard of 'relevance' were still not ripe for consideration, and would not be, until the discovery process had concluded.

94. The above explanation was of no consequence to GDB. GDB remained adamant in that they were the only ones who could define what was discoverable, what was relevant, and expected Plaintiffs to take this all at face value, if not with resignation, together with GDB's own self-serving conclusion that, in the end, none of this really matters, because Plaintiffs had not been retaliated against after all.

95. Therefore, for all of the above, Plaintiffs did not refuse to provide information or explain themselves. Plaintiffs' only refusal was to concede to an unlawful limitation of the scope of the discovery to be had in the present case, imposed by none other than GDB, the party charged with the unlawful conduct under the present claim, who happens to be in custody and control of all discoverable information to support Plaintiffs' claims.

96. Plaintiffs concede that the Rule 26 meeting could have been more productive, had Plaintiffs not drawn blank faces from GDB as GDB's only reaction to Plaintiffs' explanation of their discovery requests, and had GDB, on the other hand, not insisted in their boilerplate objections to the same, and further insisted in Plaintiffs' accepting the discovery scope limitation GDB indented to force on Plaintiffs, as laid out above. However, that is far from what GDB characterizes as '*Plaintiffs' refusal to reach a midpoint*'. GDB's mythological midpoint knows of only two requisite components: that Plaintiffs waive all their discovery rights, and that Plaintiffs concede to all of GDB's discovery demands.

97. Plaintiffs served on all Co-defendants a discovery scope definition document. That GDB takes care to mockingly refer to it in Co-defendants' *Initial Scheduling Conference Memorandum* - **Doc.# 32**, *at *24* - is yet another incident where GDB displays a breach in their duty of candor to this tribunal. Yet, even

more worrisome, it reflects on GDB's breaching their duty of competence (***ABA Model Rules of Professional Conduct, Rule 1.1 Duty of Competence***. Available at: http://www.abanet.org/cpr/mrpc/mrpc_toc.html, last visited on April 22nd, 2010, at 12:00 P.M.).

98. As Plaintiffs will more specifically address in their portion of the Report Of Parties' Planning Meeting, also to be filed on this date, Plaintiffs' discovery scope definition is a meticulous composition designed to deter GDB from engaging in further instances of the litigation abuse they have exhibited in the past. Its main purpose is to serve as a chilling-effect to GDB's attitude to bury their head in the sand, pretend that they know nothing and hear nothing, pretend that documents or evidence do not exist, and even more audaciously, pretend that that they do not understand their own information technology infrastructure.

99. Suffice it to say in this memorandum and at this moment, Plaintiffs' discovery scope definition was

put together from the principles that have been established by the most astute thinkers regarding electronic discovery - which in the present case represents all of the documentary discovery to be had - including, but not limited to:

a. The Sedona Conference, a Sedona, Arizona based think-tank devoted to promoting consideration and discussion of cutting-edge issues on the subject of electronic discovery(Available at: http://www.thesedonaconference.org, last visited on April 22nd, 2010, at 1:04 P.M.;

b. The Electronic Discovery Reference Model, a professional association which develops guidelines and standards for e-discovery consumers and providers (Available at: http://www.edrm.net, last visited on April 25th, 2010, at 5:25 P.M.;

b. Hon. Magistrate Judge John M. Facciola, District of Columbia;

**c.** Hon. Magistrate Judge Paul W. Grimm, District of Maryland;

**d.** Hon. Judge Shira Scheindlin, Southern District of New York;

**e.** Hon. Magistrate Judge Andrew Peck, Southern District of New York;

**f.** Hon. Magistrate Judge David Waxse, District of Kansas; and

**g.** Hon. Judge Lee H. Rosenthal, Southern District of Texas, who was at the helm of the Federal Rules Advisory Committee when the e-discovery amendments were developed and enacted in 2006, and whose words on the subject, therefore, carry considerable weight.

**100.** Had GDB taken the due diligence and duty of care to meet an acceptable level of competence in their own information technology infrastructure, where incidentally all of their documents and discoverable information resides, by self-preparation, retaining counsel with the adequate technical professional

traits, designation of a corporate representative from the Information Technology functional group - such as someone they would appoint under **Fed. R. Civ. P. 30(b)(6)** - or just otherwise even made an honest effort to meet their duty to act as a competent and forthright counselors, the Rule 26 meeting would have had reasonable success.

101. To GDB's cavalier attitude of finding the study of the amended rules of civil procedure an unrewarding task, it is not for nothing that philosophers have given it so unmerciful a name - *ineptitude* - but those on the receiving end of GDB's actions, the Court and Plaintiffs, can even add other qualifications: bad-faith culpability and callous disregard for their discovery duties. See: ***In re A & M Fla. Props. II, LLC,*** *2010 WL 1418861 (Bankr. S.D.N.Y. Apr. 7, 2010);* ***Rimkus Consulting Group, Inc. v. Cammarata,*** *2010 WL 645253 (S.D.Tex., 2010), at *29;* ***Qualcomm Inc. v. Broadcom Corp.,*** *2008 WL 66932*

(S.D.Cal., 2008), at *12; *Coleman v. Morgan Stanley &
Co.*, (Fla.Cir.Ct., 2005).

102. Besides having failed to meet their duty of
competence as laid out above, GDB's stance during the
Rule 26 meeting, which continues undeterred to the
present date, constitutes an egregious failure to
adhere to contemporary standards of electronic
discovery, which is sufficient for a charge of gross
negligence and abuse of the discovery process.
***Pension Comm. of the Univ. of Montreal Pension Plan
v. Banc of Am. Sec., LLC***, *2010 WL 184312, at *7
(S.D.N.Y., 2010).*

103. To that end, courts have not been sympathetic to
the inability of a party to decipher its own systems
to produce relevant information.  "A *sophisticated
reinsurer that operates a multimillion dollar
business is entitled to little sympathy for utilizing
an opaque data storage system . . . particularly
when, by the nature of its business, it can
reasonably anticipate frequent litigation.*" ***Zurich***

*__Am. Ins. Co. v. Ace Am. Reinsurance Co.,__ 2006 WL 3771090 (S.D.N.Y., 2006), at \*2.* Similarly, courts have not been sympathetic to failures to investigate a client's technological resources and system structures to uncover potential sources of information, which has led to both the law firm and the party being sanctioned for such a failure. *__Phoenix Four, Inc. v. Strategic Resources Corp.,__ 2006 WL 1409413 (S.D.N.Y., 2006), at \*6.*

104. Without knowledge of how the client has created and stored information relevant to the issues of the case, it is difficult, if not impossible, to comply with the disclosure requirements of **Fed. R. Civ. P. 26(a)**, or approach the **Fed. R. Civ. P. 26(f)** meet and confer with any genuine capability to negotiate a reasonable discovery plan.

105. Plaintiffs also take issue to GDB's characterization of 'documents illegally extracted from the bank', which albeit colorful and dramatic, represents an account of the incidents which is not

strictly true to the facts. The documents at issue were not 'extracted' from anywhere, they were just merely copied. As far as Plaintiff's behavior being characterized as 'illegal', GDB is trying to get away with charging Plaintiff with criminal conduct, yet without stating what laws were broken, nor presenting the actual documents which constitute the corpus of the imaginary crime.

106. GDB's above characterization was originally taken by Plaintiffs merely as insidiously disruptive nonsense, where GDB was just pretending to bawl, just for the fun of a little hyperbole, and which Plaintiffs didn't consider to be provocative enough to be worthy of any serious response. At this stage, however, it has to be addressed as yet another breach of GDB's duty of candor, which although precatory in nature, still can be taken into account by this Court in the management of the present case.

107. Plaintiffs also take issue to GDB's claims of the existence of a protective order over the otherwise

inconsequential set of documents. This also a deliberate, deceptive misrepresentation, or in other words, just not true. Nowhere has there been a determination of the confidentiality of such documents. That GDB insists in rhetorically designating the documents as confidential, besides its falsity, has a troubling element of fakery, in that such a claim is not only false, but can mostly be characterized as phony. Such language, which ordinarily could be taken as innocent irrelevancies, emptied of all substance and honest informative content, now becomes troublesome, when espoused by an officer of the Court as the main defense of the claims leveled by Plaintiffs against GDB.

108. For instance, in the **ORDER**, which only in GDB's nomenclature can be labeled as a "protective order", the Court's own language is to the effect, that:

"*The Court entered said Order <u>to determine whether the documents in controversy are relevant</u> to the claims present in this case*". <u>See</u>: CIVIL NO. 09-1151

(JP), **Doc.# 226**, *at *3* [emphasis added]. The Court even went so far as to find: "*After considering the arguments of the parties, the Court concludes that the following documents are relevant*", **Id.**; and, "*Having determined the relevancy of the documents, the Court will now determine what should be done with the documents*", **Id.**, *at *6* [emphasis added].

109. Furthermore, to this date, the only independent adjudicative body, which has made a determination on Plaintiff's imputed behavior has been the Arbitrator for the Department of Labor and Human Resources for the Commonwealth of Puerto Rico, on April 14th, 2010. In said ruling, the Arbitrator Stated: "*Se determina que la reclamante no incurrió en conducta incorrecta en relación a su trabajo.*", and regarding the lack of due process afforded to Plaintiff: "*Para que así sea el patrono ha de probar la conducta incorrecta imputada y de la mano también así probar que a la reclamante se le ofreció la oportunidad de ser escuchada, confrontarse con la prueba y de estar*

*asistida  legalmente,  antes  de  la  destitución."* [emphasis  added].  Roughly  translated,  the  above direct  citation  means  that  Plaintiff  was  discharged without  cause,  and  that  to  this  date,  she  has  not been  afforded  her  due  process  rights  to  challenge  the evidenced  and  the  charges  against  her.

**SUBMITTED IN NEW YORK, NEW YORK, APRIL 26TH, 2010.**

**CERTIFICATE OF COMPLIANCE**

WE  HEREBY  CERTIFY  that  the  present  document  is  fully compliant  with **Fed. R. Civ. P. 26(a)(1).**

<u>S/William E. Meléndez</u>                 <u>S/Miguel A. Cuadros</u>
William E. Meléndez                   Miguel A. Cuadros
USDC PR No. 226902                    USDC PR No. 114814

CUADROS & CUADROS                     CUADROS & CUADROS
Attorney for Plaintiffs               Attorney for Plaintiffs
410 Park Avenue 15th Floor, Suite # 1223   701 Ponce de León Avenue Suite # 215
New York, New York 10022              San Juan, Puerto Rico 00907
Tel. (718) 725-7387                   Tel.(787)725-2652
We.Melendez@e-Lex.us                  macuadros@cuad-law.com

**CERTIFICATE OF SERVICE**

WE   HEREBY   CERTIFY   that   on   this   same   date,   we electronically  filed  the  foregoing  with  the  Clerk  of

the Court using the CM/ECF system which will send
notification of such filing to all parties of interest.

**IN NEW YORK, NEW YORK, APRIL 26TH, 2010.**

<u>S/William E. Meléndez</u>              <u>S/Miguel A. Cuadros</u>
William E. Meléndez                 Miguel A. Cuadros
USDC PR No. 226902                  USDC PR No. 114814

CUADROS & CUADROS                   CUADROS & CUADROS
Attorney for Plaintiffs             Attorney for Plaintiffs
410 Park Avenue 15th Floor, Suite # 1223 701 Ponce de León Avenue Suite # 215
New York, New York 10022            San Juan, Puerto Rico 00907
Tel. (718) 725-7387                 Tel.(787)725-2652
We.Melendez@e-Lex.us                macuadros@cuad-law.com