**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| VICKY RODRÍGUEZ TORRES, et al.<br>         Plaintiffs<br>                   v.<br>Government Development Bank P.R.<br>(GDB), Guillermo Camba Casas<br>         Defendants | **CIVIL No. 09-02199-FAB**<br><br>RETALIATION, TORTS<br><br>TRIAL BY JURY |

### PLAINTIFFS' DISCOVERY PLAN AND REPORT OF PARTIES PLANNING MEETING

Plaintiffs submit the following protocol to be followed for the form, format, production and preservation of electronically stored information (**ESI**), for all discovery requests to be served on Co-defendants GDB, Guillermo Camba, and any other third-party in the possession and control of discoverable information in relation to the present case.

### I. SCOPE OF DISCOVERY

1. Except as specifically limited herein, the within procedures and protocols govern the production and preservation of discoverable electronic information

(ESI) as defined below by all Co-defendants and third parties during the pendency of this litigation.

2. Except as otherwise set forth herein, the within procedures and protocols apply solely to documents and data:

    a. attributable, supported, endorsed, referenced, owned, controlled, used, maintained, created, updated, exchanged, received, sent, or in any way accessed, exploited, employed, or under the custody of either one, or both, Co-defendants GDB and Guillermo Camba, and any other third-party in the possession and control of discoverable information;

    b. existing at any point in time, at all times relevant to the present complaint, defined as the time period comprised inclusively of the dates between January 1st, 2008, and until the present date;

    c. in any operational status, regardless of whether currently active, inactive, online, offline, onsite, offsite, whether it has been at any moment deleted or not, and whether or

not kept in local or remote storage equipment, peripherals or media;

    **d.** in electronic format in the broadest sense consistent with **Fed. R. Civ. P. 26 & 34**, and as will be further delimited and defined within the paragraphs below, not limited, but including: e-mail, electronic peer-to-peer messages, word processing documents, spreadsheets, electronic slide presentations, databases, and other electronic data items, existing at any time since January 1st, 2008 or hereafter created, containing information relating to facts at issue in the present litigation, and as will be further delimited and defined within the paragraphs below;

    **e.** in anyway considered discoverable, in the broadest sense consistent with **Fed. R. Civ. P. 26 & 34**, regardless of any pending future determination as to relevancy or admissibility.

**II. ELECTRONIC COMMUNICATIONS TO BE PRODUCED.**

**e-mail**

3. Electronic mail messaging communications containing discoverable electronic information according to the specifications below, together with:

   a. all snapshots of the Journaling systems capturing all incoming and outgoing e-mail on the relevant active e-mail servers and central messaging repositories;

   b. all snapshots of the Journaling systems capturing all activity from the corresponding archiving systems;

   c. all the original metadata associated with each such communication;

   d. attachments, sub-attachments and embedded files within the communication;

   e. will be produced in native electronic file format, in an accessible standard media;

   f. produced in according to industry best-practices related to restoration procedures and protocols recognized by *The E-Discovery Amendments to the Federal Rules of Civil Procedure: The 2007 Restyled Version and 2006 Committee Notes*.

4

**4.** Electronic mail messaging communications residing within all versions of all Microsoft Outlook email container and archive files, mail stores, mailboxes and calendars - or any other format of e-mail store containing message units, including, but not limited to, *EDB*, *OST*, *PST*, and *NSF* - pulled via network connectivity  from the MS Exchange servers or local on a workstation hard drive, or whether on a desktop, laptop, hand-held device or personal data assistant, Blackberry, iPhone, Palm, internet device, mobile phones, flash or thumb drives, CDs, DVDs, or any other storage device; assigned,  under the custody, accessible,  controlled or owned,  by any of the following  named  individuals,  or  from  which  the following named individuals, current or past GDB officers or employees, initiated, originated, sent, received  or  performed  any  electronic  messages  or transactions:

      **a.** Carlos García;

      **b.** Javier Ramos Luíña;

      **c.** Enid López López;

      **d.** Ángel Pérez Rivera;

      **e.** Luis I. Alfaro Martínez;

    **f.** Fernando Batlle;

    **g.** Marine Comas Torres;

    **h.** Naphis Torres Padró;

    **i.** Edgardo Rodríguez Nieves;

    **j.** Guillermo Camba Casas;

    **k.** Gloryvette Balaguer Estrada;

    **l.** Lynette Lugo;

    **m.** Karol Hernández.

**5.** For each Microsoft Outlook or equivalent container file produced, include: all external electronic mail address or Internet e-mail address utilized, regardless of the underlying e-mail protocol and address format, fully identifying the user and domain names, together with any and all *"aliases"* used internally by GDB; all electronic communications, transactions, events, messages, that have been sent, stored, processed, received, or accessed through each corresponding container file.

**6.** GDB will document and take steps intended to prevent any modifications, alterations, or additions to e-mails from their original state;

**7.** GDB will document and take steps to restore any communications which might have been improvidently

deleted from January 1st, 2008, until the present date, or hereafter destroyed.

## Web 2.0 infrastructure

**8.** For any and all social networking platforms, including but not limited to *Twitter*, *Facebook*, *MySpace*, *Flickr*, and the like, all:

  **a.** wall postings, chat sessions, status updates, status, comments, whether received or sent, posts, postings, chat room communications, blog postings, instant or text messages, thread posts, newsgroups, shared calendaring and scheduling, web page content;

  **b.** authored, initiated, transmitted, forwarded, sent or received by co-defendant GDB, or any of the named individuals in ¶ **4**, above.

## Office productivity tools

**9.** Microsoft Office documents in their final deliverable-quality version, or documents generated by any equivalent productivity tool used in GDB at all times relevant to the present complaint, such as: text processing files or *Word* documents, computer presentations or *PowerPoint* slides, stand alone or

*Access* databases, calculation worksheets, spreadsheets or *Excel* workbooks, containing discoverable electronic information, together with the original, unaltered metadata associated with each such document, will be produced in its native electronic file format, on a generally used standard storage media.

10. Back-up and archival copies of documents, including all related versions and drafts of the documents identified in ¶ **9**, above, will be preserved and maintained, pending resolution of the negotiation between the parties as to the definition of the restoration procedures and protocols to be followed in the present litigation.

11. GDB will take all diligent steps necessary, intended to prevent any modification, alteration, or addition, and any destruction, whether or not such destruction is improvident, deliberate, routine and part of GDB' ordinary course of business, scheduled, inadvertent or accidental as is necessary to create a comprehensive collection of such documents as defined in ¶¶ **9** and **10**, above, in their original state.

**Databases**

8

12. Integrated Enterprise Resource Management Systems, Database Management Systems and Databases or compilations, or any other automated, mechanized or software based implementation of GDB's business rules or processes, containing discoverable electronic information, together with all the original metadata associated with each such informational object, will be produced in its native electronic file format as used and maintained in GDB's ordinary course of business, on a generally used standard storage media.

13. The production of ¶ **12**, above, will include without limitation the software or application reference and technical manuals, and any file layout, data structure, database schema or data referential integrity model documentation, associated with any data, report, file format, forms, query, or structure for any of the informational objects as defined and identified within the scope of ¶ **12**, above, as used and maintained in GDB's ordinary course of business.

14. Back-up and archival copies of all databases containing discoverable information as defined within the scope of ¶ **12**, above, will be preserved and maintained, pending resolution of the negotiation

between the parties as to the definition of the restoration procedures and protocols to be followed in the present litigation.

15. GDB will take steps intended to prevent any modification, alteration, or deletion of the data in such databases but may continue to use such databases and add data to the extent that it does not cause data to be deleted, altered or modified, to the extent that such activity would defeat the discovery process of the present litigation.

### Documentation

16. Software, application, functional, technical and operating manuals for any system or technology platform that would be identified through the scope and definitions in all paragraphs above, will be produced by GDB to enable plaintiffs to access and view any discoverable electronic information produced pursuant to this stipulation. Software will mean proprietary software or any other software not commercially available for purchase at retail stores in the United States.

17. Plaintiffs will not use any of the above software for any purpose, commercial or otherwise, other than the prosecution of this litigation.

## III. SYSTEM LEVEL METADATA.

18. GDB will produce all system-level metadata for all informational systems, platforms and technological components, identified throughout the course of the present litigation, including, but not limited, to all of those identified above and throughout the scope of this document, such as: back-up, archival, restore, file and application server, operating system, database, networking, and security and access control.

## IV. IDENTIFICATION OF RESPONSIVE ELECTRONIC DATA.

19. All electronic data within the scope of the above paragraphs, or reasonably identified as being related to the same, will be timely identified and segregated if necessary by GDB and its employees, agents, contractors, or consultants, and timely reviewed in their entirety by defendants for potential and risk of responsiveness and privilege.

20. Thereafter, such discoverable electronic information which is deemed neither privileged nor otherwise

protected, will be promptly produced by GDB electronically in accordance with the guidelines herein, and according to more specific parameters as will be laid out in the corresponding formal discovery requests, to be served on GDB within the timeframe of the published calendar for the present case management. GDB will promptly produce a catalog or index of all discoverable electronic data information, within the above scope definition, including all back-up and archival copies of such data, to create a reasonably comprehensive representation of the discoverable electronic information universe.

21. Plaintiffs, through counsel, and within the limits of a designation of "for attorney's eyes only" and including "clawback" or "quick peek" provisions under **Fed. R. Evid. 502**, agree to cooperate in any effort to: pre-screen the above data for responsiveness; identify query terms; define search terms, designed to retrieve discoverable electronic data.

22. Documents meeting the above responsiveness tests and with potential for risk of being privileged, will

then be reviewed by GDB for a preliminary determination of privilege.

23. Documents meeting the preliminary determination will be withheld under the privilege log provisions of **Fed. R. Civ. P. 26(b)(5)**, until a final privilege determination can be made through either agreement between the parties, or with assistance from the Court. Documents otherwise failing the preliminary privilege determination test will be promptly produced by GDB electronically in accordance with the guidelines herein, and according to more specific parameters as will be laid out in the corresponding formal discovery requests, to be served on GDB within the timeframe of the published calendar for the present case management.

24. Documents tentatively withheld pursuant to **Fed. R. Civ. P. 26(b)(5)**, will be kept in their original, unaltered native electronic file format. Document copies or "clones" will be produced, on which any redactions will be applied for purposes of attorney or *in camera* privilege review, if in fact a preliminary determination is made that they are subject to redaction of privileged or other non-

discoverable information. GDB will identify and describe to plaintiffs the procedures and software tools and techniques used to redact any documents or data existing in electronic form, and allow Plaintiffs a reasonable time within which plaintiffs can evaluate and identify how the information at issue will be redacted, before any redaction activities are carried out.

25. All of the above search, retrieval, production and review procedures will be conducted by GDB in a manner designed to preserve all original metadata, including but not limited to file creation, access, and modification dates, associated with the discoverable electronic information being searched, retrieved, produced, or reviewed, without alteration, modification or destruction.

## V. **PRESERVATION OF ELECTRONIC DATA.**

26. During the pendency of this litigation, GDB will maintain electronic document and data retention policies designed to ensure the retention of all of the aforementioned discoverable electronic information. In connection therewith, defendants will:

a. maintain back-up procedures designed to back up all network storage devices potentially containing discoverable electronic information;

b. suspend any and all routine or automatic deletion of discoverable electronic information, including the automatic deletion of electronic mail or removal of unused electronic data and files, and the effect of long-term off-line storage media rotation;

c. secure any and all hard drives and mirror image back-ups of such hard drives of any and all computing devices, including laptop or desktop computers used by GDB employees and contractors potentially containing discoverable electronic information that are not backed up in the ordinary course, before the reformatting, redeployment, or disposal of such hard drives.

27. Data archived or backed up as part of a special back-up, whether due to system upgrade, transition planning, system migration, disaster recovery planning, or any other reason, that potentially contains discoverable electronic information will be

securely    retained    for    the    remainder    of    the
litigation.

28. Legacy  software  and  hardware  necessary  to  access,
manipulate,  print,  search  and  retrieve  discoverable
electronic  information  that  is  inactive,  archived  or
backed  up  will  be  securely  retained  for  the  remainder
of the litigation.

29. Existing  or  hereafter  created  full  or  incremental
back-up  storage  media  periodically  created  that
potentially    contains    discoverable    electronic
information  will  be  securely  retained  indefinitely,
until   the   present   litigation   has   ended,   and   all
appellate review procedures have been exhausted.

30. GDB  will  issue  affidavits  certifying  on  behalf  of
all  employees  or  independent  contractors  working  at
its   facilities   at   all   times   relevant   to   this
complaint,  and  who  are  reasonably  believed  to  have
created,  altered  or  accessed  discoverable  electronic
information  on  GDB  non-network  storage  devices,  such
as  desktop  hard  drives,  laptop  hard  drives,  home
computer  hard  drives,  and  any  handheld  device,  that
such  devices  and  any  back-up  media  thereof  maintained
by   each   such   employee   or   contractor   have   been

16

searched for discoverable electronic information and any such data has been copied to a backed-up network storage device for the preservation of the same. GDB will instruct such employees and contractors in the manner of copying such files so as to retain, without modification or alteration, all metadata associated with the files at issue. GDB will on a semiannual basis have such employees and contractors that potentially possess discoverable electronic information certify that any newly created data has been copied to a secure, backed-up network storage device to ensure its preservation. GDB will implement specific steps to monitor its employees' compliance with the preservation guidelines herein, and to that end develop, document and submit to Plaintiffs specific procedures to effectuate such monitoring, which will include random audits of non-networked storage devices, and regularly scheduled semiannual audits and certifications of all other computing and storage devices.

31. GDB will, on a regular basis, report to Plaintiffs the results of such audits and, if requested, provide to plaintiffs certifications from those employees

whose devices were audited. GDB will maintain records of any compliance audit undertaken in accordance with this document, which will be securely retained in the event that such information may be needed in the present litigation.

VI. **AUDIT TRAIL AND CHAIN OF CUSTODY.**

32. Electronic records and computerized information must be produced with sufficient information to permit identification of:

    **a.** producing individual;

    **b.** GDB internal or external organization responsible for its production;

    **c.** name or identity of the specific server or computer system from which the backup was produced or information copied;

    **d.** name or identity of the specific server or computer system upon which the information was originally created;

    **e.** name or identity of the specific server or computer system upon which the information was maintained during the course of normal business;

**f.** technical description of the system from which they were derived;

**g.** manufacturer's name, version, release, or model number for electronic hardware, operating system, software, along with any proprietary software, written documentation, special parameters, and instructions used to create and maintain the electronic records, sufficient to permit those records to be read from the media produced;

**h.** when the information was first created, along with the date of its most recent modification;

**i.** the extent that decryption or access passwords are necessary to unlock any computerized information in its original form.

**VII.** **TIMING AND SEQUENCING OF DISCOVERY.**

**33.** Plaintiffs submitted their initial disclosures to Co-defendants on April 5th, 2010.

**34.** Plaintiffs are serving on Co-defendants their first discovery requests, in the form of a set of interrogatories and production of documents, on April 6th, 2010.

35. Plaintiffs foresee they will serve on Co-defendants a request for admissions, mainly for the purpose of authenticating the GDB documents Plaintiff have already identified in their April 5th, 2010 initial disclosures. The exact content of said requests for admissions is still undetermined and will depend largely on the facts the parties are able to agree to stipulate on their joint *Rule 26(f) Conference Report of Parties' Planning Meeting*.

36. Plaintiffs are planning to take a single deposition, on co-defendant Guillermo Camba, and propose as alternative dates May 17th, 19th, or 21st, 2010.

37. Plaintiffs are planning to issue subpoenas on third parties, only with assistance of the Court, and as might become necessary due to Co-defendants' lack of responsiveness to the other methods of discovery, as identified above. Such subpoenas would include, but not be limited to the following third parties:

   a. Office of the Comptroller for the Commonwealth of Puerto Rico;

   b. Any third party identified in the contracts maintained by the above entity;

**c.** Social Networking provider Facebook, of Palo Alto, California;

**d.** Any third party who's purported confidential information was unlawfully disclosed by Plaintiff, and which resulted in Co-defendants instigating disciplinary procedures against her;

**e.** Equal Employment Opportunity Commission;

**f.** Department of Labor for the Commonwealth of Puerto Rico.

**SUBMITTED IN NEW YORK, NEW YORK, APRIL 26TH, 2010.**

S/William E. Meléndez
William E. Meléndez
USDC PR No. 226902

CUADROS & CUADROS
Attorney for Plaintiffs
410 Park Avenue 15th Floor, Suite # 1223
New York, New York 10022
Tel. (718) 725-7387
We.Melendez@e-Lex.us

S/Miguel A. Cuadros
Miguel A. Cuadros
USDC PR No. 114814

CUADROS & CUADROS
Attorney for Plaintiffs
701 Ponce de León Avenue Suite # 215
San Juan, Puerto Rico 00907
Tel.(787)725-2652
macuadros@cuad-law.com

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of interest.

21

**IN NEW YORK, NEW YORK, APRIL 26TH, 2010.**

S/William E. Meléndez                    S/Miguel A. Cuadros
William E. Meléndez                      Miguel A. Cuadros
USDC PR No. 226902                       USDC PR No. 114814

CUADROS & CUADROS                        CUADROS & CUADROS
Attorney for Plaintiffs                  Attorney for Plaintiffs
410 Park Avenue 15th Floor, Suite # 1223 701 Ponce de León Avenue Suite # 215
New York, New York 10022                 San Juan, Puerto Rico 00907
Tel. (718) 725-7387                      Tel.(787)725-2652
We.Melendez@e-Lex.us                     macuadros@cuad-law.com